Kirkpatrick v. McElroy.

---

Andrew Kirkpatrick, receiver, appellant,

*v.*

Joseph McElroy, respondent.

1. An adverse decree in a suit for a share of the profits of partnership business, as compensation for services rendered to a firm, is not a bar to an action upon a *quantum meruit* for the value of such services.

2. A receiver appointed for the settlement of partnership affairs at the suit of the personal representative of a deceased partner, with power to collect and receive all moneys and property of the firm, and out of the proceeds to pay the debts of the firm, supersedes the surviving partner in the possession and control of the partnership effects, and in the authority to settle up the partnership affairs. Such a receiver is a necessary party to suits affecting partnership property, and in a proceeding in chancery by a creditor, for the payment of a firm debt out of partnership assets in the receiver's hands, a judgment at law against the surviving partner, recovered after the receiver was appointed, is a nullity.

3. The appointment of such a receiver, being for the benefit of all firm creditors, in analogy with a creditor's bill, suspends the running of the statute of limitations in equity against claims by firm creditors for the payment of partnership debts out of the firm assets in the receiver's hands.

On appeal from a decree of the court of chancery. On petition filed by McElroy to have a debt due to him from the firm of James Horner & Co. paid out of partnership assets in the hands of Kirkpatrick, receiver.

The facts in this case are fully set out in the opinion of the vice-chancellor, reported in *Buckingham* v. *Ludlum,* *10 Stew. Eq. 137.*

*Mr. Frederick W. Stevens,* with whom were *Mr. J. M. Buckingham* and *Mr. William Jay,* of New York, for appellants.

I. The chancellor having determined that the judgment rendered in favor of the respondent was void against the partnership estate, no power was vested in him to adjudicate the petitioner's claim *de novo* on *quantum meruit.*

The chancellor, however, in his opinion, at page 142, states that "no objection is made to the method in which the petitioner seeks relief. It is not insisted that relief of the nature asked can only be given in a suit regularly brought, to which all persons in interest are made parties and afforded an opportunity to make defence." It is submitted, with all due deference to the learned chancellor, that no consent to proceed in the manner stated is disclosed by the record, nor was such consent in fact given. The fact that no objection was made cannot be construed or urged as a waiver of any rights which either the appellant or the repre-

sentative of the deceased partner may have had.   The question
is wholly jurisdictional, and cannot be waived.   It is well settled
that jurisdiction can neither be waived nor created by consent.
*Coffin* v. *Tracy, Col. & Cai. 470 ; S. C., 3 Cai. 129 ; Dudley* v.
*Mayhew, 3 N. Y. 9–12; Daykin* v. *Demming, 6 Paige 95 ; Heyer*
v. *Burger, Hoffm. Ch. 1 ; McMahon* v. *Rauhr, 47 N. Y. 67 ;
Shaw* v. *Shaw, 12 Johns. 257 ; Davis* v. *Packard, 7 Pet. 276.*
Nor is want of jurisdiction waived by an appearance to contest.
*Grocers' Bank* v. *Clark, 31 How. Pr. 115.*   Nor is it enough to
say that inasmuch as the objection was not made below, it can-
not be taken on appeal.   It is well settled that a defect of juris-
diction in a court below may be set up for the first time on
appeal.   *Ex parte Livingston, 34 N. Y. 555 ; Jones* v. *Trans-
portation Co., 50 Barb. 193 ; Brookman* v. *Hammil, 43 N. Y.
554 ; Latham* v. *Edgerton, 9 Cow. 227.*

The equitable powers only of the court below were invoked,
and the respondent having failed to show himself entitled to any
relief under his petition, the court erred in determining the rights
of respondent on *quantum meruit.   Heywood* v. *The City of Buf-
falo, 14 N. Y. 534, 537, 540.*

So, it was held that in an action commenced and tried by the
court as an action in equity, the plaintiff therein seeking, upon
various allegations, equitable relief and equitable relief only, the
court, finding that the plaintiff is not entitled to any equitable
relief, cannot, upon certain facts appearing upon the trial which
would warrant an action by the plaintiff for damages, but which
he has neither alleged nor claimed, assess or cause to be assessed
such damages, and order judgment therefor against the defend-
ant.   *Bradley* v. *Aldrich, 40 N. Y. 504.*   See, also, *Mann* v.
*Fairchild, 3 Ct. of App. Dec. (N. Y.) 152.*

The power of a chancellor to hear an action purely legal in its
character was but recently investigated in this court in the case
of *Palys* v. *Jewett, 5 Stew. Eq. 304.*

II.   The claim of respondent having once been litigated, and
the case having been heard on all its merits, and dismissed, such
former adjudication is a complete bar to this proceeding.

The action came up for trial before the Hon. Amzi Dodd, a

Kirkpatrick *v.* McElroy.

master in the court of chancery, who, after the submission of the cause to him and a careful consideration of the same, held, first, that the alleged contract sued upon was in fact never made by the firm of James Horner & Co.; and secondly, if such a contract did in fact ever exist, it rested entirely in parol, and was therefore void under the statute of frauds.

*THE MASTER. This suit is for an account and the recovery of a share of partnership profits alleged to be due the complainant, not as a partner, but by way of compensation for services in the business of the firm.

The complainant, Joseph W. McElroy, was the superintendent of the steel works belonging to the late firm of James Horner & Co. This firm, composed of James Horner and James Ludlum, after carrying on for twenty years a large manufacturing business, of which their steel works were a part, was dissolved by the death of the senior member, James Horner, on the 9th of June, 1874. Mr. Horner resided in his lifetime in the city of New York. Mr. Ludlum resided on the property of the firm in Pompton. The property included about five hundred acres of land at that place, a large water-power, factories in which the manufacture of different products was conducted, dwelling-houses, machinery and personal property of various descriptions. By the will of Horner, his estate was given to his daughter, Alice Buckingham, wife of John M. Buckingham, in part to her own use and in part in trust for his other daughter. Soon after his death differences arose between his representatives and the surviving partner, and in August, 1874, a bill was filed in this court by his executrix, Alice Buckingham, against Ludlum, for the appointment of a receiver and the settlement of the partnership affairs. By an order of the chancellor, on my advice, Ludlum was appointed receiver on the 17th of November, 1874. The prevention of protracted litigation between the parties, which was contemplated in this appointment, has not been effected. The antagonistic and embit-

---

*NOTE.—This opinion was not published in connection with that of the court of appeals affirming it (*5 Stew. Eq. 828*), and it is therefore inserted here.—REP.

tered relations existing between them is partially disclosed by the pleadings and proofs in this suit, and give to it some peculiar and unusual features.

The bill alleges that the firm of Horner & Co., on or about the 1st of July, 1869, at Pompton, agreed with the complainant to pay him, as compensation for his superintendence of the steel works, one-eighth of the profits of the business of the steel works during the time he should be the superintendent after said day, and did also guarantee to him that the one-eighth of said profits should not be less than $3,000 in each year thereafter. That by the arrangement then made he was sure of receiving from said firm, during the period of his superintendence, $3,000 in each year, and such proportion of the one-eighth of said profits as should appear to be annually made out of said business.

The defendants in the bill are Ludlum and wife, Alice Buckingham, and John M., her husband, and Susan Horner, the *cestui que trust* in the will of her father. The several answer of Ludlum admits the making of the agreement set up in the bill. The answer of Alice Buckingham and her husband denies the making of the agreement, and charges that McElroy and Ludlum have combined to establish an unfounded claim against the estate to absorb and dispose of the entire property that remains.

The bill was filed in January, 1877. Testimony was taken before an examiner, and a hearing had before me as advisory master in the following November. Being of opinion that the cause, as it stood, ought not to be finally and conclusively disposed of upon the points then presented by it, but that further proofs should be taken as well to such points as to requisite materials for an account, and the ascertainment of how much, if anything, was due to the complainant upon the agreement set up in the bill, the suit was further held for that purpose. The additional testimony and exhibits were subsequently produced, the cause argued upon all the questions raised by the pleadings and proofs, and a final decree advised by me dismissing the bill. The conclusion was arrived at not without hesitation, in view of the testimony of Ludlum, who was called by the complainant

and favorable to his claim, but with a strong conviction in the end, after the best consideration I have been able to give, that it was the only conclusion I could legally or equitably reach.

The alleged agreement was a verbal one. No note or memorandum of its terms, or of the fact of an agreement, was made when it was entered into, or at any time afterwards during the lifetime of Horner. At his death there was nothing in the books or accounts of the firm to suggest it. These books and accounts had been poorly and imperfectly kept. No settlements had ever been made between the partners. The separate branches of their business had not been discriminated, but were blended together in the accounts. Inventories of property or stock were not made, except the partial one of July 1st, 1869, which was a list of articles connected with the steel works, but without prices or value. A steel works account was begun July 1st, 1869, but as it stands in the books is partial and incomplete. From July 1st, 1869, till Horner's death in June, 1874, no yearly settlements were made, no inventories taken, and no balances to show whether profits or losses were the yearly results of the business. Whether profits resulted to the steel works, and if so, how much in each year, during the five years from July 1st, 1869, is a question incapable of solution without sifting the accounts contained in the books and supplying their defects by estimates and allowances, which can give at best but approximate and unsatisfactory results. On what views profits should be reckoned, or, in other words, how far interest on capital, interest on indebtness, rents, taxes, wear and tear of machinery, buildings &c., should be considered, or was meant to be considered by the partners, or would be necessary now to be taken into the account in any attempt to assign the profits of the steel works alone, I think it would be far from easy to say. I think, from the examination I have made of the books, that any estimate of profits would for these reasons be open to very great doubts. Looking at the state of the partnership books and affairs as they stood on the 1st day of July, 1869, and also as they subsequently continued to be, it is difficult to think that an agreement for a share of the profits of the steel works so definite

Kirkpatrick *v.* McElroy.

and complete as to be capable of judicial enforcement was then made or thought necessary to be made by the parties. A general understanding, dependent on particular terms and adjustments, thereafter to be agreed on in an amicable settlement between them, is more compatible with the conduct of the parties, and I think also with the other proofs in the cause.

When the firm was dissolved, its assets, real and personal, were supposed to be large, over and above its indebtedness. By the shrinkage of values, by the sale under foreclosure of the real estate, and the sale at a sacrifice of the personal, the firm assets have since been disastrously reduced. Whatever the profits of the steel works may be thought to have been as of July 1st, 1869, on calculations and valuations relating back to that date, they are not represented by existing available assets. So that if the amount of profits exceeding $20,000, which the complainant now seeks to recover, in addition to the $15,000 he has received, should be allowed him, it would more than absorb the available assets now left of the partnership estate. The large indebtedness adjudged to be due from Ludlum to the firm would, as far as now appears, leave this available remnant distributable to the estate of the deceased partner, Horner.

The complainant was employed by the firm first as a puddler in the steel works, receiving wages as a workman till September, 1866, then for a year at a salary of $1,500, then till July, 1869, at a salary of $2,000 a year. For the five years following the last date he received $3,000 per year. This annual salary, Mr. Ludlum says, was meant to insure the complainant against loss. His claim for larger compensation does not seem to have been present to the mind of Mr. Ludlum when first stating the liabilities of the firm after dissolution. The uncertainties and dangers attaching to the recollections of witnesses, when the details of transactions long past are derivable solely from memory, are not to be overlooked in dealing with the parol understanding on which the estate of the deceased partner is sought to be charged. I am constrained to say, in view of the relations of the parties peculiar to this case, that an agreement, " clear, definite and unequivocal in all its terms," such as the settled rule

35

of equity requires, has not, to my mind, been established by the proofs.

But taking the agreement in substance and form, as Mr. Ludlum's best recollection after the lapse of eight years has enabled him to state it, is the agreement one on which this suit against Horner's representatives can be maintained? I am of opinion that it is not. What his best recollection of it was, as first stated in his evidence, appears from the questions and answers on cross-examination as follows:

" *Q.* How long before July 1st, 1866, did you contemplate a new arrangement with Mr. McElroy?

" *A.* Well, I cannot answer exactly.

" *Q.* About how long?

" *A.* I cannot tell exactly; it may have been one month or three months.

" *Q.* Had you talked it over with him during the preceding week or month?

" *A.* I had talked it over with him preceding July 1st, 1869.

" *Q.* About how long before the agreement actually did take effect, and when was it that you made the agreement with him?

" *A.* I cannot answer that, it is so long ago.

" *Q.* You cannot give an answer, then, that it was before that time?

" *A.* It might have been four or six weeks.

" *Q.* It was previous?

" *A.* Yes, sir.

" *Q.* You can swear to that?

" *A.* Yes, sir.

" *Q.* Who was present when the contract was made?

" *A.* I don't remember.

" *Q.* Did you make any written agreement?

" *A.* No, sir; I never made any written agreement with Mr. McElroy about any agreement with him.

" *Q.* What were the terms of agreement—the last agreement—with Mr. McElroy, made prior to July 1st, 1869?

" *A.* The agreement between Mr. McElroy and the firm of James Horner & Co. was that from the 1st day of July, 1869, he should receive as a compensation for his services a salary which should be equivalent to one-eighth of the profits of the business, and to insure him against loss it was agreed and understood that his profits should not amount to less than $3,000 per year; he was simply a salaried superintendent, and the amount to be gauged in that manner.

" *Q.* Now, was that agreement to stand any longer than a year?

" *A.* Yes, sir; it was to stand continually, right along.

" *Q.* But was it not limited to the first year of his employment?

" *A.* No, sir; it was not."

Kirkpatrick v. McElroy.

If an agreement, clear, definite and unequivocal in all its terms, defining the nature and amount of the profits which the ·complainant was to take, can be regarded as established by the proofs, it must be taken, I think, to have been made prior to ·July 1st, 1869, to go into operation on that day, and calling for yearly services and yearly settlements thereafter—consequently a ·contract not to be performed within a year from the time it was ,made.

It was contended on the argument, by the counsel of the complainant, that this contract is exempted on two grounds from the operation of the statute of frauds requiring it to be in writing: first, because the making of the contract has been admitted in the answer of Ludlum, the surviving partner; second, because the contract has been partly performed. Neither of these contentions, it seems to me, can prevail. Without suggesting any distinction between the statute of frauds and the statute of limitations, but accepting the settled rules as to the effect of a partner's admission under the latter statute as equally applicable to the former, it is enough to say that in the present case the admissions ·of Ludlum were made subsequent to the death of Horner, his partner, and do not bind his representatives. The rule elucidated and settled in *Merritt* ads. *Day, 9 Vr. 32*, was relied on to give ·efficacy to Ludlum's admissions. There a payment of interest made by a partner on a note of the firm after its dissolution, and before the note had been due six years, was held to renew it as against the statute of limitations. Both members of the firm were bound by the admission involved in the payment, for the reason that the act of one was the act of both, an agency for each other being implied. But both partners in that case were living. Had one been dead, the admission by payment would have been binding only on the party making it. This is the point ·of the decision in *Disborough* v. *Bidleman, 1 Zab. 677*, where it was held by the court of errors and appeals that payment on a joint and several bond by the surviving obligor after the death of his co-obligor, will not take the case out of the statute as against the heirs of the deceased obligor. The implied agency held to exist between two partners or joint debtors, by virtue of

which one can bind the other by admissions, was said by the court to be revoked by the death of either. When the community of interest between the makers of a joint and several promissory note is severed by the death of one, the representatives of the decedent, it was held, could not be made liable by admissions made after his death by a surviving codebtor.

Nor do I think that there is any reason for exempting the agreement from the statute because of part performance. Where a parol contract has been partly performed, courts of equity compel its execution to prevent the commission of a fraud with impunity. But the acts relied on as part performance must be exclusively referable to the contract. In order to make the acts such as a court of equity will deem part performance of an agreement within the statute, it is essential that they should clearly appear to be done solely with a view to the agreement being performed. For if they are acts which might have been done with other views, they will not take the case out of the statute, since they cannot properly be said to be done by way of part performance of the agreement. *Story's Eq. Jur.* § *762; Wallace* v. *Brown,* *2 Stock. 308; Ackerman* v. *Ackerman, 9 C. E. Gr. 315.*

The acts relied on as part performance in the present case are the services rendered by the complainant. But how can they be referable exclusively to a contract for one-eighth of the profits instead of a compensation by salary ? How are his services from July 1st, 1869, referable to such a contract any more than during the years prior to this date when he also received salary ? In *Cooper* v. *Carlisle, 2 C. E. Gr. 525,* it was said by the court of appeals, commenting on the painful uncertainty of parol evidence to establish agreements years after the time when alleged to have been made, that courts are disposed to enforce the statute as wise and salutary in its effects. Its effect, I think, will be right in this case.

Decree advised dismissing the bill, but without costs.

The bill was thereupon dismissed on the merits. An appeal was taken from this decision to the court of errors, who affirmed

the decree of the court below. See *McElroy* v. *Ludlum, 5 Stew. Eq. 828.*

In the suit so brought by the respondent on such contract, the answer of the Buckinghams (alleging payment of respondent's claim in full for services to the dissolution of the firm on June 9th, 1874) raised the real and vital issue in the case, and this defence so raised resulted in the finding of the court that nothing whatever was due respondent either on the alleged contract sued upon or any contract whatever.

This defence of payment was a proper answer and defence to respondent's bill for an accounting. *Brown* v. *Van Dyke, 4 Hal. Ch. 795; Lockwood* v. *Thorn, 11 N. Y. 175; Tolland* v. *Sprague, 12 Pet. 300, 335; Driggs* v. *Garetson, 10 C. E. Gr. 178; Weed* v. *Small, 7 Paige 573; Story's Eq. Plead.* § *798.*

In *Freeman on Judgments* the author states the effect of a dismissal of a bill in chancery as follows :

"The dismissal of a bill in chancery stands nearly on the same footing as a judgment at law, and will be presumed to be a final conclusion on the merits, whether they were or were not heard and determined, unless the contrary appears on the face of the pleadings or in the decree of the court." Citing *2 Smith's Lead. Cas. 167; The Duchess of Kingston Case 1; Ne·ifie* v. *Neafie, 7 Johns. Ch. 1; Willcox* v. *Badger, 6 Ohio 406; Taylor* v. *Yarborough, 13 Gratt. 183; Scully* v. *C. B. & Q. R. R. Co., 46 Iowa 528; Perrine* v. *Dun, 4 Johns. Ch. 140; Adams* v. *Cameron, 40 Mich. 506; Cochran* v. *Cooper, 2 Del. Ch. 27; Thompson* v. *Clay, 1 Bland Ch. 206; People* v. *Smith, 51 Barb. 360; Osburgh* v. *Lafarge, 2 N. Y. 113; Holmes* v. *Remsen, 7 Johns. Ch. 286; 1 Vern. 310; 1 Brown P. C. 281; Burhens* v. *Van Zeuld, 7 N. Y. 523.*

III. The respondent and Ludlum (the surviving partner) having, soon after the dissolution of the firm, stated, settled and balanced their accounts, and Ludlum having paid to the respondent the large balance found due him, the respondent is barred from bringing any action against the late firm for any cause of action arising prior to that settlement. *Lockwood* v. *Thorn, 1 Kern. 170; Tolland* v. *Sprague, 12 Pet. 300, 335;*

*Brown* v. *Vandyke, 4 Hal. Ch. 135;* see, also, *Dutcher* v. *Porter, 63 Barb. 15, 19; Lake* v. *Tyson, 6 N. Y. 461; Treadwell's Exrs.* v. *Abrahams, 15 How. 219; 5 Den. 304; 2 Seld. 461; Styles* v. *Brown et al., 1 Gill 350; Story's Eq.* §§ *523, 526, 527.*

IV. The respondent's claim against the late firm, if any he has, cannot be enforced because the same is barred by the statute of limitations. *Rev. p. 594.*

In *Wood on Limitations of Actions* § *210,* it is said : " If at the date of the dissolution there are debts due to or from the firm, the partnership liability continues until such matters are liquidated, or until they are barred by the statute.   *   *   *   Upon the death of a partner, the firm is *ipso facto* dissolved, and the statute begins to run for and against the personal representatives at once." See also *Wiseman* v. *Smith, 6 Jones Eq. 124; Knox* v. *Gye, L. R. (5 H. of L.) 674; Tatam* v. *Williams, 3 Hare 349.*

In August, 1874, a bill was filed in equity for a settlement of the partnership estate, and for the appointment of a receiver. A receiver was appointed in November, 1874. The appointment of such receiver did not suspend the operation of the statute. *Harrisson* v. *Duignan, 2 Dru. & War. 301.*

The statute of limitations must be pleaded. *Brand* v. *Longstreet, 1 South. 325.* The statute was properly pleaded against this claim by appellant. No reply was filed thereto to show that the respondent came within the saving clause of the statute, nor was any amendment made to the petition; there was, therefore, no issue on this point, and the answer must be deemed to be true. *Gaskell* v. *Sine, 2 Beas. 130; Flagg* v. *Vandoren, 2 Stock. 82; McLane* v. *Shepherd, 6 C. E. Gr. 76; Brown* v. *Van Dyke, 4 Hal. Ch. 795–802.*

While the statute of limitations may have no application to a technical and continuing trust which is subject to inquiry in a court of equity only, and the question arises between the trustee and *cestui que trust,* yet it does apply to a trust in respect to which there is a remedy at law. *Governor* v. *Woodsworth, 63 Ill. 254; Paff* v. *Kinney, 1 Bradf. 1.* So, it has been held that a trust

Kirkpatrick *v.* McElroy.

raised merely by implication of law is within the operation of the statute. *McLane* v. *Shepherd, 6 C. E. Gr. 76.* So, in cases of concurrent jurisdiction, such as matters of account &c., where the parties may proceed either at law or in equity, the statute of limitations applies with equal force in both courts. *Teach* v. *Gilson, 8 Md. 70; Crocker* v. *Clements, 23 Ala. 296; Pratt* v. *Northam, 5 Mass. 95; Bailey* v. *Carter, 7 Ired. Eq. 282; Robinson* v. *Hook, supra 152.* In such cases courts of equity do not act so much in analogy to the statutes as in obedience to them. *Hovenden* v. *Annesley, 2 Sch. & Lef. 607–629; Willhelm* v. *Caylor, 32 Md. 151; Ayer* v. *Stewart, 14 Minn. 97; Dodge* v. *Lenox Ins. Co., 12 Gray 65; Longworth* v. *Hunt, 11 Ohio St. 194–201; 2 Story's Eq. § 1520; Carroll* v. *Green, 92 U. S. 509.*

The rule is that the statute attaches *proprio vigore* to any legal claim, and follows it wherever it goes into equity for a peculiar equitable remedy. And the court applies the bar, not by analogy, but in obedience to the statute. The test is not whether the remedy is legal or equitable, but whether the claim is legal or equitable, and if the latter, equity follows the law as to limitation. *Field* v. *Wilson, 6 B. Mon. 479, 481; McCrea* v. *Purman, 16 Wend. 476; Humbert* v. *Trinity Church, 24 Wend. 605–608; Green* v. *Johnson, 3 G. & J. 389; Dugan* v. *Gettings, 3 Gill 161.*

If the respondent had brought an action at law in the proper forum, and had made the proper parties defendants to the same, the defense of the statute would have been interposed by the defendants, and the court would have been bound to allow it. The same rule under the cases *supra* follows the claim into equity, and the rules of the former forum should have been applied. *Hovenden* v. *Lord Annsley, 2 Sch. & Lef. 630.*

V. This point is founded on the theory of the learned court below that this matter was an open question, to be tried before him on the merits.

If this is correct, then—the parties having once litigated this matter on an alleged contract, and that contract having been by the court of chancery and this court declared to have never been

made—then it follows that the parties are remitted to their rights under the only valid contract which was ever made in relation to these services, and while it stands on the books, and has been acted upon, and was never altered or changed during the lifetime of the firm, it must govern this matter, and no action on *quantum meruit* can be maintained while this contract still remains in force.

It was held by the court of chancery, on the former trial, that after the dissolution of the firm it was not competent for the surviving partner to make any new contract or promise to bind the estate. See opinion of Vice-Chancellor Dodd in the former trial. And see *McElroy* v. *Ludlum, 5 Stew. Eq. 828.* See *Disborough* v. *Bidlemann's Heirs, 1 Zab. 677 ; Bell* v. *Morrison, 1 Pet. 351; Grover & Baker Sewing Machine Co.* v. *Bulkley, 48 Ill. 189; McKinney* v. *Peek, 28 Ill. 174; Derpend* v. *Wulbridge, 15 N. Y. 374; Car* v. *Chartiers Coal Company, 25 Pa. St. 337.*

" It is an established rule that an implied contract cannot arise where there is a subsisting express contract, covering the entire subject matter." *Galloway* v. *Holmes, 1 Doug. 330 ; Ford* v. *Mc Vay, 55 Ill. 119 ; Smith* v. *Bowler, 1 Disn. 520.*

A contract in writing is presumed to embrace all that the parties intended; and, unless there is a latent ambiguity, parol evidence is not admissible to alter, vary or explain it. See *Kemp* v. *Rose, 1 Giff. 258 ; Evans* v. *Roe, L. R. (7 C. P.) 138; Giraud* v. *Richmond, 2 C. B. 835; Ross* v. *Hardin, 79 N. Y. 84.*

VI. This point is also founded on the theory of the learned court below that this was an open question, to be tried before him on the merits. If his theory is correct, and this was the only question before him, then it is submitted that the evidence shows that the claim possesses no merits, and that the payment to him for his services, at the rate of $3,000 per year, is and was liberal pay.

*Mr. John R. Emery, contra.*

The opinion of the court was delivered by

Depue, J.

The decision in the former suit between McElroy and Ludlum, receiver, does not conclude the petitioner in this case. The controversy in that case related to the petitioner's claim for a share of the profits of the firm business as compensation for his services. The court disallowed that claim on two grounds: first, that such a contract was not proved; and second, that if it had been it was invalid under the statute of frauds. *McElroy* v. *Ludlum, 5 Stew. Eq. 828.* This suit is brought upon a *quantum meruit,* to recover for such services, and is the remedy which the court, in denying relief in the former case, indicated as the proper remedy to be adopted by the petitioner.

The petitioner's claim is for services rendered to the firm of James Horner & Co., which was dissolved June 9th, 1874, by the death of James Horner. Ludlum is the surviving member of the firm. The petitioner brought suit at law against Ludlum, as surviving partner, for these services, and recovered a judgment for $21,300 damages, and $61.84 costs. He collected out of Ludlum on account of this judgment the sum of $600; the balance is unpaid. The vice-chancellor, on the hearing, disregarded the judgment at law and retried the case upon the merits, and ascertained the value of the petitioner's services to be $19,766.68, and deducting $15,000 received by him during the lifetime of Mr. Horner, and the $600 collected on the judgment, ascertained the balance remaining unpaid to be $4,760.80.

On the dissolution of a partnership by the death of one of its members, the surviving partner is alone suable at law for partnership debts, and is entitled to the possession and control of the firm assets to enable him to discharge the debts and to settle the affairs of the partnership. *3 Kent 64; 2 Lindley on Part. 665; Murray* v. *Mumford, 6 Cow. 441; Case* v. *Abeel, 1 Paige 393.* If there were no other peculiarities in this case than the fact that firm assets, out of which firm debts should be paid, were in the control of the court of chancery, the judgment at law recovered against the surviving partner would be conclusive. But the sit-

uation of this case is materially altered by the proceedings which were taken in the court of chancery for the settlement of the partnership affairs before the suit at law was begun against the surviving partner.

Shortly after the death of Mr. Horner, Mrs. Buckingham, the executrix and residuary devisee under the will of James Horner, filed a bill in chancery for the appointment of a receiver and the settlement of the partnership affairs. By a decree of the court, made November 17th, 1874, Ludlum, the surviving partner, was appointed receiver with power to collect and receive all moneys and property belonging to the firm, and out of the proceeds to pay the debts of the firm, and to take and retain possession of the firm property with a view to the ultimate settlement of the affairs and business of the firm under the direction of the court of chancery. On the 31st of July, 1879, Ludlum was removed from his receivership, and Andrew Kirkpatrick was appointed receiver in his place. The petitioner did not begin his suit against Ludlum as surviving partner until September 10th, 1880.

On the appointment of a receiver for the settlement of the partnership affairs, the surviving partner was superseded in the possession and control of the partnership effects, and in the authority to settle up the partnership affairs. The possession and control of the partnership effects and the authority to settle partnership affairs, were, by the appointment of a receiver, vested exclusively in that officer. He was a necessary party to any suit affecting the property of the partnership. *Kirkpatrick* v. *Corning, 11 Stew. Eq. 234.* The petitioner's claim being against the partnership, for services rendered to the firm, he might have presented his claim to the receiver, and proceeded to collect it out of the partnership assets in the receiver's hands, without first bringing his action at law against the surviving partner, and exhausting his legal remedy against him. His judgment against the surviving partner, without the receiver being a party to the suit, was a nullity as against the receiver. No demand for an issue to which the receiver might be a party was made, and the vice-chancellor properly proceeded to try the case upon the merits.

The receiver has interposed the plea of the statute of limitations. The petitioner's term of service began July 1st, 1869, and ended June 9th, 1874. The receiver was appointed November 17th, 1874. The bar of the statute had not attached when the receiver was appointed.

The suit being brought for the enforcement of a legal right, with respect to which the statute of limitations would be a bar in a court of law, the statute will be available in bar of relief in a court of equity (*McClane* v. *Shepherd, 6 C. E. Gr. 76 ; Knox* v. *Gye, L. R. (5 H. of L.) 656, 674*), unless the running of the statute was suspended by the proceeding in the court of chancery for the settlement of the partnership affairs. As a general rule, the mere· appointment of a receiver to take charge of property in dispute will not suspend the operation of the statute (*Anon., 2 Atk. 15*), nor will it interrupt the possession of a stranger so as to prevent the statute conferring title on him, or suspend the running of the statute against a stranger. *Harrisson* v. *Duignan, 2 Dru. & War. 295 ; Kerr on Receivers 172.* But where the receiver is appointed to take charge of an estate for the purpose of administering it, as, for instance, the settlement of the affairs of a partnership and the payment of firm debts, the suit being substantially for the benefit of all the creditors, in analogy with an ordinary creditor's bill, the appointment of a receiver with such powers will suspend the running of the statute (*Sterndale* v. *Hankinson, 1 Sim. 393, 398; Wrixon* v. *Vize, 3 Dru. & War. 104*) ; and the lapse of time before proceeding against the receiver in the court by which he was appointed will be regarded only on the question whether the creditor has been guilty of laches in delaying the prosecution of his demand.

In 1877 the petitioner filed his petition in the former suit, and that litigation was not finally disposed of until July, 1880. After the petition in the former suit had been dismissed, the petitioner, under the impression that he must first bring suit and exhaust his remedy at law against the surviving partner, brought such suit on the 10th of September, 1880. That case was tried and proceeded to judgment, and the present petition was filed in the early part of June, 1881. The bar of the statute had not attached

when the petition in the first suit was filed. The six years' limitation expired while that suit was pending. The present petition is simply a continuation of the proceedings begun in 1877, and surely there has been no unreasonable suspension of efforts on the part of the petitioner for the collection of his claim.

The vice-chancellor decided that for the services the petitioner rendered to the firm he was entitled to $4,000 a year. I think that sum was a full, fair and reasonable allowance to the petitioner. The vice-chancellor credited the $15,000 the petitioner received before the dissolution of the partnership and the $600 collected on his judgment, and allowed interest on the balance. The decree is right in all respects, and should be affirmed.

*Decree unanimously affirmed.*